## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**MANTISSA CORPORATION,**

     **Plaintiff,**

**v.**

**POLISH & SLAVIC FEDERAL CREDIT UNION,**

     **Defendant.**

**Case No. 1:17-cv-09176**

**Hon.**

**JURY TRIAL DEMANDED**

---

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Mantissa Corporation ("Plaintiff" or "Mantissa"), for this Complaint against Polish & Slavic Federal Credit Union ("Defendant"), alleges as follows:

### NATURE OF LAWSUIT

1.     This is an action for patent infringement under 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

### PARTIES

2.     Plaintiff Mantissa is an Alabama corporation with its principal place of business at 1012 Edenton St., Birmingham, AL 35242-9258.

3.     On information and belief, Defendant is a federal credit union having its headquarters at 100 McGuinness Blvd, Brooklyn, New York 11222.

4.     On information and belief, Defendant has branches in the States of New York, New Jersey, Pennsylvania, and Illinois.

### JURISDICTION AND VENUE

5.     On information and belief, Defendant has committed acts and continue to commit acts of patent infringement giving rise to this action under the patent laws of the United States,

35 U.S.C. §§ 271 and 281. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

6.  On information and belief, under Illinois's long-arm statute, 735 ILCS § 5/2-209, Defendant submitted to the personal jurisdiction of this Court because Defendant, inter alia: transacted business within the State of Illinois; committed a tortious act within the State of Illinois; engaged in an act of patent infringement in the State of Illinois and this District; has places of business within the State of Illinois; regularly conducts or solicits business in the State of Illinois; engages in other persistent courses of conduct in the State of Illinois; and/or derives substantial revenue from goods and services provided to persons or entities in the State of Illinois. Further, on information and belief, Defendant has established minimum contacts with the State of Illinois and this District such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

7.  On information and belief, venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because Defendant (a) has a regular and established place of business in this District and the State of Illinois; (b) has conducted business in this District and the State of Illinois; (c) has committed acts of infringement in this District and the State of Illinois; and/or (d)(i) resides in this District, (d)(ii) is incorporated in the State of Illinois; and/or (d)(iii) is registered to conduct business in the State of Illinois.

8.  On information and belief, Defendant is willing to waive any defect in venue in this District under 28 U.S.C. §§ 1391(b) and 1400(b) to have this action heard in this District.

## BACKGROUND

9.  Mantissa is an enterprise software company founded in 1980 and developing identity protection solutions since 2003. Mantissa's main product for identity protection is the

iDovos® system (http://idovos.com/), first offered in 2006. The iDovos system lets identity owners set conditions for use of their identity assets. The conditions include on/off, category, and geographic scope.

10.     The iDovos system is protected by, among other intellectual property rights, U.S. Patent No. 9,361,658 ("'658 Patent") titled "System and Method for Enhanced Protection and Control Over the Use of Identity." A copy of the '658 Patent is attached as Exhibit A and is incorporated herein by reference.

11.     The United States Patent and Trademark Office ("USPTO") duly and legally issued the '658 Patent" on June 7, 2016.

12.     Mantissa is the exclusive licensee of the '658 Patent, and holds all substantial rights and interest in the '658 Patent.

13.     Generally, the '658 Patent claims specific methods, executed on electronic computer hardware in combination with software, for protecting and controlling use of an entity's financial account.

14.     Generally, the claims of the '658 Patent provide specific methods and systems in which an account owner, rather than a bank, can define, over a network, rather than through bank personnel, a scope of use of the owner's account including whether the account is ON or OFF, whether certain categories of transaction partners are authorized for transactions using the account, and a geographical area in which transactions are authorized. At the time of the claimed invention, these methods were not "well-understood, routine, conventional" activities in the banking industry. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

15.     The claims of the '658 Patent solve a problem that is rooted in computer technology that uses computer networks, namely, preventing fraudulent transactions using

financial accounts accessible over a computer network. The claims of the '658 Patent do not recite the performance of well-understood, routine, conventional business practice known before the invention defined by the claims.

16. The '658 Patent matured from U.S. Patent Application No.14/218,128 ("'128 Application") filed March 18, 2014.

17. Based on the prosecution history of the '658 Patent, the USPTO found the claims of the '658 Patent (i) valid under 35 U.S.C. §§ 102, 103 and (ii) eligible for patent protection under 35 U.S.C. § 101.

18. On June 19, 2014, during prosecution of the '658 Patent, the U.S. Supreme Court held in *Alice* with respect to another patent that under 35 U.S.C. § 101, the abstract idea of intermediated settlement was not eligible for patent protection and that patent claims requiring generic computer implementation of the abstract idea failed to transform it into a patent eligible invention.

19. In view of *Alice*, the USPTO issued the following instructions to the USPTO patent examiners examining pending patent applications including the pending '128 Application:

(a) "Preliminary Examination Instructions" (June 25, 2014) re: determining eligibility of claims in pending patent applications under 35 U.S.C. § 101;

(b) "2014 Interim Guidance on Patent Subject Matter Eligibility" (December 16, 2014) "set[ting] forth a two-part analysis for claims reciting judicial exceptions in view of recent decisions by the U.S. Supreme Court and the U.S. Court of Appeals for the Federal Circuit";

(c) "July 2015 Update: Subject Matter Eligibility" (July 2015) updating item (ii) and "assist[ing] examiners when applying [item (ii)] during the patent

examination process"; and

(d)  Memo re: "Formulating a Subject Matter Eligibility Rejection and Evaluating the Applicant's Response to a Subject Matter Eligibility Rejection" (May 4, 2016) "provid[ing] information to the examining corps on best practices for formulating a subject matter eligibility rejection and evaluating the applicant's response."

Fed. Reg., Vol. 79, No. 241, pp 74618-633; USPTO website https://www.uspto.gov/patent/laws-and-regulations/examination-policy/subject-matter-eligibility.

20.     On Jan. 27, 2016, the applicant for the '658 Patent filed a Response to Non-Final in the prosecution of the '658 Patent arguing that certain factors in the pending patent claims "were not routine or conventional in April 27, 2005, the priority date for the present application", the "claims are directed to methods for reducing misuse of identity to assist in preventing financial fraud", and "improve an existing technology: the use of credit card and/or debit cards to facilitate financial transactions", and for those and other reasons, the claims were not patent ineligible under *Alice*. '658 Patent Prosecution History, Response to Non-Final Office Action filed Jan. 27, 2016, pp. 9-12 (available through USPTO Public PAIR https://portal.uspto.gov/pair/PublicPair).

21.     On February 11, 2016, after reviewing the above referenced Response, and analyzing the patent claims in the '128 Application under 35 U.S.C. § 101 in view *Alice* and other court decisions, and according to the above-referenced USPTO instructions, the USPTO allowed the claims noting that the "Applicant argument(s) regarding improvement of conventionally known credit card/debit card technology is persuasive." '658 Patent Prosecution History, Notice of Allowability filed Feb. 11, 2016, p. 2 (available through USPTO Public PAIR

https://portal.uspto.gov/pair/PublicPair).

## INFRINGEMENT OF THE '658 PATENT

22.     On information and belief, Defendant is a bank or credit union that has made, used, offered to sell, sold or imported products, systems, and services, including but not limited to Defendant's products, systems and services for debit and/or credit card control, monitoring, and management incorporating the "CardValet" app or similar products, systems, and services ("Products") in the United States, including in this District, individually and in concert with others. *See* Defendant's website https://en.psfcu.com/debit-cards (and select "CardValet (NEW!)" to see a description of the CardValet app).

23.     Defendant advertises, describes, and advises on use of the CardValet app as follows:

> **CardValet** from Fiserv lets PSFCU debit cardholders safeguard their cards from fraud with customized alerts and the ability to set limits on cards.
>
> When users download **CardValet** from Google PlayTM or the App StoreSM, they can:
>
> Turn their cards on or off from their smartphones
>
> Sign up for transactional alerts based on amount, location, merchant type, etc.
>
> Access real time account balances
>
> Set location preferences, so their card works only where they are
>
> Set limits for spending - great for parents or employers…
>
> Click here to view a brief video about the features of the **CardValet** service and app.

Defendant's website https://en.psfcu.com/debit-cards (and select "CardValet (NEW!)") (emphasis revised).

24.     On information and belief, at least use or execution of the Products by Defendant and entities having financial accounts at Defendant causes performance of each of the steps

recited in claims 1-16 of the '658 Patent.

25.     The performance of each of the steps recited in any of claims 1-16 of the '658 Patent constitutes infringement of the respective claims of the '658 Patent.

26.     Defendant has had knowledge and notice of the '658 Patent and its infringement at least through the receipt of a letter sent to Defendant on November 6, 2017 requesting any explanation if Defendant believes there is no correspondence between the claims of '658 Patent and the Products.

27.     Defendant provided no explanation in response to the request.

28.     Despite this knowledge and notice, Defendant continues to commit the herein-mentioned infringing acts. Defendant's knowledge of the '658 Patent in advance of the letter will be a subject of discovery.

## CAUSE OF ACTION

## PATENT INFRINGEMENT OF THE '658 PATENT – 35 U.S.C. § 271

29.     Plaintiff incorporates by reference each of the allegations in paragraphs 1-28 above and further alleges as follows:

30.     Defendant, individually or based on the actions of other entities attributable to Defendant, has infringed and continues to infringe claims 1-16 of the '658 Patent by making, using, offering to sell, selling, or importing Products that perform or cause performance of each step of claims 1-16 of the '658 Patent.

31.     Defendant induced and continues to induce infringement of claims 1-16 of the '658 Patent by inducing others to make, use, offer to sell, sell, or import Products embodying the claimed invention. Defendant has had knowledge of the '658 Patent at least through the receipt of the letter sent to Defendant on November 6, 2017. Defendant specifically intends for the

Products to be used in an infringing manner by, among other things, offering the Products to customers, instructing them on use of the Products, and instructing them to "download CardValet" for use with the Products. *See* Defendant's website https://en.psfcu.com/debit-cards (and select "CardValet (NEW!)") and excerpts therefrom *infra*.

32.     Defendant contributed to and continues to contribute to infringement of claims 1-16 of the '658 Patent by offering to sell, selling or importing Products or a component thereof for use in practicing the patented invention, constituting a material part of the invention. Defendant has knowledge of the '658 Patent as described above. Defendant knew the Product or a component thereof was especially made or adapted for use in an infringement of the claims of the '658 Patent. The Product or the component thereof is not a staple article or commodity of commerce suitable for substantial non-infringing use.

33.     Defendant contributed and continue to contribute to infringement of claims 1-16 of the '658 Patent by, e.g., offering to sell, selling and importing certain types of debit cards, credit cards, apps, and/or financial accounts ("Components") for use in practicing the patented invention, constituting a material part of the invention. Defendant has knowledge of the '658 Patent as described above. Defendant knew the Components were especially made or adapted for use in an infringement of the claims of the '658 Patent. The Components are not a staple article or commodity of commerce suitable for substantial non-infringing use.

34.     Defendant has committed, and continues to commit acts of infringement of the '658 Patent under the Doctrine of Equivalents in addition to the above allegations of direct, contributory and inducement of infringement.

35.     Defendant's past and continued acts of infringement of the '658 Patent have caused damage to Plaintiff. Plaintiff is entitled to recover damages from Defendant in an amount

subject to proof at trial, but in no event less than a reasonable royalty for Defendant's infringement together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

36.     Defendant's infringement of the '658 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court from further acts of infringement.

37.     Defendant's conduct in infringing the '658 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## JURY TRIAL DEMAND

Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.     a permanent injunction under 35 U.S.C. § 283 enjoining Defendant, all those in privity with Defendant, their affiliates, officers, agents, employees, and attorneys, and anyone acting in concert with them, from infringing, inducing infringement and contributing to the infringement of the claims of '658 Patent;

B.     a judgment that Defendant has infringed, directly and indirectly, the claims of the '658 Patent literally and/or under the doctrine of equivalents under 35 U.S.C. § 271;

C.     damages in an amount sufficient to compensate Plaintiff for Defendant's infringement of the claims of the '658 Patent;

D.     enhanced damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement;

E.     a declaration that this case is exceptional under 35 U.S.C. § 285 and Plaintiff's reasonable attorneys' fees, expenses and costs for prosecuting this action;

9

F.      pre-judgment and post-judgment interest to Plaintiff on the foregoing amounts at the maximum allowable rate recoverable by law; and

G.      such other and further relief as this Court may deem just and proper either at law or in equity.


Dated: December 20, 2017                          Respectfully submitted,

                                                 /s/ Nicholas A. Kurk
                                                 Nicholas A. Kurk (ARDC 6292133)
                                                 Young Basile Hanlon & MacFarlane, P.C.
                                                 150 N. Wacker Dr., Suite 1450
                                                 Chicago, IL 60606
                                                 (312) 754-9332 / (248) 649-3338 Fax
                                                 kurk@youngbasile.com

                                                 -and-

                                                 John Demarco (*Pro Hac Vice To Be Filed*)
                                                 Young Basile Hanlon & MacFarlane, P.C.
                                                 700 Milam St., Suite 1300
                                                 Houston, TX 77002
                                                 (832) 871-5058 / (248) 649-3338 Fax
                                                 demarco@youngbasile.com

                                                 -and-

                                                 Kenneth A Godlewski
                                                 (*Pro Hac Vice To Be Filed*)
                                                 Hunter Taubman Fischer LLC
                                                 1201 15th Street, NW, Suite 200
                                                 Washington, DC 20005
                                                 202-704-5860 / 202-659-2697 Fax
                                                 kgodlewski@htflawyers.com

                                                 *Attorneys for Plaintiff*